# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| The Estate of SUSAN J. MOULDER, MICHAEL J. MOULDER, as Executor for the Estate and Individually, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. N20C-03-299 AML |
| SUJUNG PARK, M.D., Individually; and MEDICAL ONCOLOGY HEMATOLOGY CONSULTANTS, P.A., a Delaware Professional Association, et al., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Submitted: June 7, 2022
Decided: September 29, 2022

## <u>MEMORANDUM OPINION</u>

**Upon Defendant's Motion for Summary Judgment - GRANTED**

Bartholomew J. Dalton, Esq and Jessica Needles, Esq. of DALTON & ASSOCIATES, PA., Wilmington, Delaware; Attorneys for Plaintiffs Michael J. Moulder, as Executor for the Estate of Susan J. Moulder.

Stephen J. Milewski, Esq. and Emily K. Silverstein Esq., of WHITE AND WILLIAMS LLP, Wilmington, Delaware; Attorneys for Defendants SuJung Park, M.D. and Medical Oncology Hematology Consultants, P.A.

**LEGROW, J.**

The plaintiff in this case initiated a medical malpractice suit relating to medical treatment administered to his late wife. The plaintiff alleges the defendant doctor violated the applicable standard of care by failing to timely review and notify the plaintiff's late wife of a CT chest report that identified new pulmonary nodules in her lungs. It is undisputed that the purportedly negligent medical care was not a proximate cause of the decedent's death, so the plaintiff has not made a wrongful death claim. The plaintiff alleges, however, that as a result of the delayed notification his late wife suffered severe emotional distress, pain, and suffering, which would not have occurred but for defendant's gross negligence and willful and wanton conduct.

At the close of discovery, the defendant moved for summary judgment, arguing that the plaintiff's contended breach of the standard of care did not result in a lack of treatment or physical injury, and that the plaintiff's mental anguish claim therefore fails as a matter of law. The primary issue raised by the pending summary judgment motion is whether there is any record evidence that the decedent's "feelings of betrayal, increased drinking, and need to seek out other medical providers" satisfy the requirement under Delaware law that a mental anguish claim manifest with "substantial" and "ongoing" physical symptoms. Because (i) the plaintiff has not created a record that his late wife suffered a physical injury or had substantial and ongoing physical symptoms of mental anguish, and

1

(ii) even if the plaintiff created a record to meet that standard, the plaintiff has not provided an expert opinion that there was a causal link between the defendant's alleged negligence and the plaintiff's wife's depression and anxiety, the defendant's motion for summary judgment is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are undisputed. Plaintiff, Michael J. Moulder ("Mr. Moulder"), was married to Susan J. Moulder ("Mrs. Moulder") until her death in December 2018.[1]

Mrs. Moulder was diagnosed with Stage II squamous cell carcinoma of the mouth in September 2016.[2] Mrs. Moulder's cancer was attributed to her significant alcohol intake and smoking history.[3] As part of her treatment, on October 11, 2016, Mrs. Moulder underwent surgical resection of the floor of her mouth and ventral surface of her tongue, and neck dissection.[4] Mrs. Moulder then was enrolled in a clinical trial for post-operative external beam radiation therapy without chemotherapy.[5] The clinical trial protocol included post-treatment imaging with chest CTs every six months.[6] Mrs. Moulder's course of treatment for her mouth

---

[1] Pl.'s Compl. ¶ A.
[2] Plaintiff's Answering Brief in Opposition to Defendant's Summary Judgment Motion (hereinafter "Pl.'s Answ. Br. in Opp.") at 2.
[3] Defendant's Motion for Summary Judgment (hereinafter "Def.'s Mot.") at 2.
[4] Pl.'s Answ. Br. in Opp. at 2.
[5] Def.'s Mot. at 2-3.
[6] *Id.* at 3.

2

cancer was complicated by osteoradionecrosis of the mandible, sub-arachnoid hemorrhage, bi-apical nodularity, hypertension, and hyperlipidemia.[7] She experienced substantial pain, depression, and anxiety associated with the lifestyle changes she endured during her cancer treatment and recovery.[8]

Approximately a year after completing cancer treatment, Mrs. Moulder began seeing the defendant, Dr. Sujung Park.[9] While under Dr. Park's care, Mrs. Moulder underwent a chest CT on January 12, 2018, as part of the clinical trial protocol.[10] The radiologist's impression noted "a 7 x 6 mm nodule in the posterior aspect of the right middle lobe along the major fissure. Question of a new 5 mm left apical nodule, although it is adjacent to pleural scarring."[11] The radiologist who conducted the scan recommended Mrs. Moulder undergo a follow-up scan in three months.[12] There is no dispute that Dr. Park's office received the radiologist's report in January 2018. There is, however, a factual dispute as to whether and when Dr. Park reviewed the report. Dr. Park maintains she reviewed the report promptly and recognized the recommendation for a three-month follow-up but made the decision not to tell Mrs. Moulder immediately and to proceed with the existing protocol for

---

[7] *Id.*
[8] Defendant's Opening Brief (hereinafter "Def.'s Opening Br.", Ex. 6.
[9] Pl.'s Compl. § B ¶ 10. Defendant Medical Oncology Hematology Consultants, P.A. is the practice where Dr. Park works.
[10] Def.'s Mot. at 3.
[11] *Id.*
[12] *Id.*

a six-month follow-up scan.[13] Dr. Park testified she made this decision because disclosing the nodule's existence or ordering a three-month follow-up would exacerbate Mrs. Moulder's anxiety and discomfort with no corresponding therapeutic benefit. Mr. Moulder, in contrast, contends Dr. Park either negligently failed to review the report or failed to order the recommended follow-up, and that in either case she violated the standard of care. For purposes of the pending summary judgment motion, the Court adopts Mr. Moulder's view of the facts.

Mrs. Moulder returned to Dr. Park on July 17, 2018, for her routine follow-up appointment, and Dr. Park made no mention of the nodules in Mrs. Moulder's lungs. She did, however, instruct Mrs. Moulder to undergo another CT scan.[14] On July 27, 2018, Mrs. Moulder underwent the recommended chest CT, which revealed the nodule had grown to 10 x 19 mm (previously 7 x 6 mm).[15] After the CT scan, Mrs. Moulder had a follow-up appointment with Dr. Park on August 2, 2018, at which point Dr. Park for the first time disclosed the presence of the new nodules.[16] Dr. Park was concerned the nodule growth was positive for either metastatic or new primary lung cancer and referred Mrs. Moulder to pulmonary for a bronchoscopy with biopsy, and PET/CT for full staging.[17]

---

[13] Def.'s Opening Br. at 3-4.
[14] Pl.'s Answ. Br. in Opp. at 5-6.
[15] Def.'s Mot. at 5.
[16] Pl.'s Answ. Br. in Opp. at 7.
[17] Def.'s Mot. at 5.

As a result of the delayed notification of the pulmonary nodules, Mrs. Moulder allegedly lost trust in Dr. Park and decided to seek a second opinion from Dr. Christine Ciunci, M.D., at Penn Presbyterian Medical Center.[18] Dr. Ciunci found the nodules "concerning for metastases of her head and neck cancer v. less likely a primary lung cancer vs. other" and referred Mrs. Moulder to an interventional pulmonologist for biopsy.[19] Due to other health issues, however, Mrs. Moulder did not have any additional cancer testing. Specifically, in the fall of 2018, Mrs. Moulder was admitted to the hospital several times for alcoholic hepatitis and liver cirrhosis attributed to Mrs. Moulder's heavy drinking.[20] On November 14, 2018, Mrs. Moulder was admitted to the hospital with hepatic encephalopathy. On December 1, 2018, Mrs. Moulder died from end stage liver disease from alcoholism and lung mass with metastatic disease to liver.[21]

Before Dr. Park told the Moulders about the nodule, Mrs. Moulder's treatment team referred her to a psychologist for anxiety and psychosocial issues.[22] At an appointment with a psychologist on July 24, 2018, Mrs. Moulder self-reported depression and anxiety associated with her floor of mouth cancer, the pain associated with it, and how it had impacted her life.[23] Multiple treatment records

---

[18] Pl.'s Answ. Br. in Opp. at 7.
[19] *Id.* at 7-8.
[20] *Id.* at 8.
[21] *Id.*
[22] Def.'s Mot. at 6. Ex. 6.
[23] *Id.*

reflect that she consumed 750ml to 1.5L of sake wine per day, that she had been drinking that amount for many years, and that she had no intention of stopping despite her doctors' recommendations that she do so.[24] Mrs. Moulder's ultimate cause of death was severe liver disease unrelated to the cancer and attributable to Mrs. Moulder's significant alcoholism.[25] Mr. Moulder does not contend that Dr. Park's delayed notification or the failure to order a three-month follow-up scan contributed to Mrs. Moulder's death. It is undisputed that there was no available treatment for the nodules. Rather, Mr. Moulder contends Dr. Park's actions caused Mrs. Moulder mental anxiety and anguish. The record, however, reflects that Mrs. Moulder was suffering from mental health concerns before Dr. Park's alleged negligence.

Mr. Moulder filed this action seeking judgment against Dr. Park for compensatory and punitive damages and for loss of consortium. Mr. Moulder is not pursuing a wrongful death claim, and all the parties' experts agree that Mrs. Moulder did not die from lung cancer and did not sustain physical injuries as a result of Dr. Park's treatment.[26] At the close of discovery, Dr. Park moved for summary judgment. After briefing and oral argument, the Court took the motion under advisement.

---

[24] Def.'s Mot. at 6. Ex. 6.
[25] *Id.*
[26] Def.'s Mot, Ex. 3 at 87, 102, 107.

## PARTIES' CONTENTIONS

Dr. Park argues that her motion for summary judgment should be granted because any purported breach of the standard of care relating to Dr. Park's treatment did not result in a lack of treatment or any physical injury to Mrs. Moulder.[27] Dr. Park asserts that her decision to wait until a comprehensive diagnostic study and testing was available did not cause any physical injury, and Mr. Moulder cannot maintain a claim for mental anguish under Delaware law unless the mental anguish manifests into physical symptoms.[28] Dr. Park further contends Mr. Moulder's loss of consortium claim fails as a matter of law because it is derivative of "the physically injured spouse's cause of action." Finally, Dr. Park asserts there is no evidence supporting a punitive damages claim because, at most, Dr. Park's treatment was negligent and did not exhibit the heightened standard needed to allow a jury to consider a claim for punitive damages.[29]

Mr. Moulder contends Dr. Park's failure to timely notify Mrs. Moulder of the new lung nodule and failure to appropriately order additional testing caused physical injuries.[30] Mr. Moulder asserts that the physical injury was "the potentially malignant nodule growing unchecked" inside Mrs. Moulder's lung and the emotional distress the Moulders endured after learning of Dr. Park's alleged

---

[27] Def.'s Mot. at 9.
[28] *Mergenthaler v. Asbestos Corp. of America*, 480 A.2d 647, 651 (Del. 1984).
[29] Def.'s Mot. at 16.
[30] Pl.'s Answ. Br. in Opp. at 11.

duplicity.[31] Mr. Moulder argues Dr. Park's treatment resulted in Mrs. Moulder's feelings of betrayal, increased drinking, and need to seek out other medical providers.[32] Mr. Moulder contends a jury easily could find that Mrs. Moulder's rage, anxiety, depression, and increased drinking are legally recognized physical injuries or symptoms.[33] In addition, Mr. Moulder contends he will never know if, had Mrs. Moulder had her follow-up CT scan earlier, the nodule would have grown enough to be biopsied or be visible on a PET scan, and that regrettably, by the time Mrs. Moulder had her follow-up CT in July 2018, she was too ill to have any viable treatment options available to her.[34]

Finally, Mr. Moulder argues that he has a valid claim for loss of consortium and that he is entitled to punitive damages because Dr. Park's reckless indifference toward Mrs. Moulder is the type of egregious behavior that punitive damages are intended to address.[35]

## STANDARD OF REVIEW

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[36] A material

---

[31] *Id.*
[32] *Id.* at 12.
[33] *Id.* at 15.
[34] *Id.* at 13.
[35] *Id.* at 19.
[36] Del. Super. Ct. Civ. R. 56(c).

8

issue of fact exists if "a rational finder of fact could find some material fact would favor the moving party in a determinative way[.]"[37]

When considering a motion for summary judgment, the Court must view the record in the light most favorable to the non-moving party.[38] The moving party bears the initial burden to demonstrate that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[39] If the moving party meets the initial burden, the burden shifts to the non-moving party to show that a genuine issue of material fact is in dispute.[40]

To establish a claim for medical negligence, a plaintiff must show by a preponderance of the evidence that a medical provider breached the standard of care, the breach was a proximate cause of harm to the plaintiff, and the plaintiff suffered damages from that harm.[41] Delaware's Medical Malpractice Act requires expert testimony to establish (1) the applicable standard of care, (2) how the provider's care deviated from that standard, and (3) the causal connection between the deviation and the alleged injury.[42]

---

[37] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).
[38] *Hazel v. Del. Supermarkets, Inc.*, 953 A.2d 705, 709 (Del. 2008).
[39] *Rice v. Rice*, 2020 WL 4908096, at *1 (Del. Super. 2020).
[40] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[41] 18 *Del. C.* § 6853; *Jones v. Crawford*, 1 A.3d 299, 302-303 (Del. 2010).
[42] 18 *Del. C.* § 6853; *Vick v. Khan, et al.,* 2019 WL 2177114, at *6 (Del. Super. May 17, 2019).

## ANALYSIS

**A. The record would not allow a reasonable trier of fact to conclude Mrs. Moulder suffered a physical injury or had physical symptoms of mental anguish.**

To recover for Mrs. Moulder's mental anguish under Delaware law, Mr. Moulder must show that the alleged mental anguish manifested into a physical injury.[43] "[The] alleged physical injury must be present at the time of the tort,"[44] but "[n]ot all physical injuries are recoverable."[45] When mental anguish manifests with "substantial" and "ongoing" physical symptoms, a plaintiff may sustain a claim.[46] Where, however, the mental anguish solely is in the form of emotional disturbance and "transitory, non-recurring physical phenomenon," there is no liability.[47]

In *Lupo v. Medical Center of Delaware, Inc.*, a married couple sued the defendant hospital for "mental anguish" stemming from "the lost opportunity to spend time with their baby while it was alive, and the lost opportunity to arrange for a religious ceremony and cremation of the body" of their newborn baby.[48] The plaintiffs' symptoms consisted of "sleeplessness, headaches, crying spells, rage, nervousness, guilt, eating disorders and depression" which lasted for over three

---

[43] *Mergenthaler v. Asbestos Corp. of America*, 480 A.2d 647, 651 (Del. 1984).
[44] *Doe v. Wildey*, 2012 WL 1408879, at *7 (Del. Super. March 29, 2012).
[45] *Id.*
[46] The Restatement (Second) of Torts, § 436A; *Lupo v. Medical Center of Del. Inc.*, 1996 WL 111132 (Del. Super. 1996).
[47] The Restatement (Second) of Torts, § 436A; *Lupo v. Medical Center of Del. Inc.*, 1996 WL 111132 (Del. Super. 1996).
[48] *Lupo v. Medical Center of Del. Inc.*, 1996 WL 111132 (Del. Super. 1996).

years.[49] The Court in that case closely considered subsection (c) of The Restatement (Second) of Torts, § 436A, which states:

> …long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character. This becomes a medical or psychiatric problem, rather than one of law.[50]

The Court found the married couple had "provided evidence which, if believed by a jury, would establish that they had suffered substantial, recurring episodes of sleeplessness, nightmares, headaches…and mental distress, which persisted over three years and were still ongoing."[51] The Court found that a jury could conclude they had suffered legally recognized physical injuries."[52]

Conversely, in *Doe v. Wildey*, the plaintiffs alleged their sexual abuse resulted in "physical injuries," including the "physical phenomena [of] fear, feelings of disgust, shame, anger and embarrassment."[53] The court denied the mental anguish and emotional distress claims because they were transitory and not physical in nature.[54]

---

[49] *Id.* at *2 (Del. Super. 1996).
[50] *Lupo v. Medical Center of Del. Inc.*, 1996 WL 111132 at *3 (Del. Super. 1996)(citing Restatement (Second) of Torts § 436A(c)(1965)).
[51] *Id.* at *3.
[52] *Id.*
[53] *Doe v. Wildey*, 2012 WL 1408879, at *8 (Del. Super. March 29, 2012).
[54] *Id.* (citing Restatement (Second) of Torts § 436A cmt. c & illus. 1)). The Restatement (Second) of Torts § 436A explains that transitory, non-recurring physical phenomena, such as nausea and

11

Here, Mr. Moulder has not created a record from which a jury could conclude Mrs. Moulder suffered a physical injury or had ongoing physical symptoms of mental anguish. Mr. Moulder's two theories regarding the presence of a physical injury or symptoms both fail to meet Delaware's standard for the type of physical injury necessary to support a mental anguish claim. Mr. Moulder asserts the first physical injury was the potentially malignant nodule growing unchecked inside Mrs. Moulder's lung and the emotional distress the Moulders endured after learning of Dr. Park's alleged duplicity.[55] Here, however, there is no dispute that there was no available treatment to slow or treat the nodules even if Mrs. Moulder had known of them in January 2018. As a result, the growth of the nodules or the absence of treatment was not caused by Dr. Park's alleged negligence and cannot be the physical injury necessary to impose liability for mental anguish.

Mr. Moulder alternatively asserts Mrs. Moulder suffered physical injuries as her health and well-being deteriorated in 2018.[56] Again, Mrs. Moulder's physical deterioration was unrelated to Dr. Park's alleged negligence. Mr. Moulder himself testified that these symptoms were from her liver disease.[57] Mr. Moulder's expert has not opined that Mrs. Moulder's worsening physical condition was caused by the

---

rage, "fall within the category of emotional disturbances which are not recognized as physical illnesses."

[55] Pl.'s Answ. Br. in Opp. at 11.

[56] *Id.* at 15.

[57] Pl.'s Answ. Br. in Opp., Ex. B at 38.

new nodules identified in the scan. To the contrary, Mr. Moulder's expert, Dr. David Harris, who is board certified in internal medicine, medical oncology, and hematology,[58] testified that the injuries Mrs. Park suffered are "psychologic, mental injuries, not so much injuries associated with the direct effects of the cancer." [59] Dr. Harris testified regarding Mrs. Moulder's loss of trust, anger, and emotional trauma, but those are forms of mental disturbance that cannot alone support a negligence claim under Delaware law.[60]

Finally, Mr. Moulder also testified that Mrs. Moulder's depression, anxiety, and drinking worsened as a result of Dr. Park's negligence. Increased alcohol consumption, however, is not a physical symptom supporting a mental anguish claim, and Mrs. Moulder's depression and anxiety did not otherwise manifest in sustained physical phenomena.[61] For all the foregoing reasons, defendants are entitled to summary judgment as to plaintiff's mental anguish claim.

**B. Even if Mr. Moulder had created a record of Mrs. Moulder's physical symptoms, Mr. Moulder has not provided an expert opinion as to a causal link between Dr. Park's alleged negligence and Mrs. Moulder's depression and anxiety.**

Delaware law requires a plaintiff in a medical negligence case to support her claim with expert testimony as to the standard of care, breach of that standard, and

---

[58] *Id.* Ex. D, at 10:4-18.
[59] Harris Dep. at 102, Def's. Mot. Ex. 3.
[60] *Id.* at 106:24-107:5, Def's. Mot. Ex. 3.
[61] *Hostetter v. Hartford Ins. Co.*, 1992 WL 179423, at *10-11 (Del. Super. Jul. 13, 1992) (rev'd on other grounds, *Connelly v. St. Farm*, 135 A.3d 1271, Del. Super. Mar. 4, 2016)).

the causal link between that breach and the plaintiff's alleged damages.[62] "Proximate cause is a necessary element of any tort claim."[63] "[A] proximate cause is one which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred."[64] Mr. Moulder concedes that, in this case, he must proffer expert testimony that Dr. Park's actions or inactions were a proximate cause of the mental anguish Mrs. Moulder allegedly suffered.[65]

Here, however, Mr. Moulder has not identified a qualified expert to testify as to that causal link. It is undisputed that Mrs. Moulder suffered from depression, anxiety, and alcohol use disorder before she learned about the nodules and Dr. Park's alleged duplicity. Dr. Harris testified in this matter as to the standard of care, opining that a new finding of a nodule on a CT scan requires follow-up.[66] With regards to causation, Dr. Harris stated that he "believed Mrs. Moulder's mental condition would have been a lot better if Dr. Park had not been negligent."[67] It is important to note that Dr. Harris is an oncologist who is not qualified to testify regarding psychological conditions. Even if he was qualified, however, Dr. Harris has not opined to a reasonable degree of medical probability that Mrs. Moulder's pre-

---

[62] 18 *Del. C.* § 6853; *Vick v. Khan, et al.,* 2019 WL 2177114, at *6 (Del. Super. May 17, 2019).
[63] *Doe v. Wildey*, 2012 WL 1408879, at *4 (Del. Super. March 29, 2012).
[64] *Id.*
[65] Pl.'s Answ. Br. in Opp. at 9.
[66] Pl.'s Answ. Br. in Opp., Ex. D, at 54:12-24 and 55:1-3.
[67] Harris Dep. at. 87, Def's. Mot. Ex. 3.

existing mental health conditions worsened as a result of Dr. Park's alleged negligence. Mr. Moulder's testimony that Mrs. Moulder drank more after learning of the nodules does not constitute expert testimony of causation, and Mr. Moulder has not pointed to any medical records indicating Mrs. Moulder's depression, anxiety, and drinking worsened after Dr. Park's alleged negligence. Accordingly, even if Mr. Moulder could satisfy the physical injury standard for the mental anguish claim, Mr. Moulder has not satisfied Delaware's requirement that a plaintiff proffer expert opinion as to causation.

### C. Mr. Moulder's loss of consortium claim fails because Mr. Moulder has not created a record that Mrs. Moulder suffered a physical injury or had physical symptoms of mental anguish.

Mr. Moulder's loss of consortium claim fails as a matter of law because it is derivative of "the physically injured spouse's cause of action."[68] Having concluded that Mr. Moulder failed to create a record that would allow a jury to find in Mr. Moulder's favor as to Mrs. Moulder's mental anguish, Mr. Moulder's loss of consortium claim fails as well.

### D. Mr. Moulder's punitive damages claim fails because there is no evidence supporting a punitive damages award.

Mr. Moulder's punitive damages claim fails for two independent reasons. First, because Mr. Moulder cannot maintain his underlying cause of action for

---

[68] *Jones v. Elliott,* 551 A.2d 62, 64 (Del. 1988).

15

compensatory damages, Mr. Moulder's punitive damages claim necessarily fails.[69]

Second, and even if the mental anguish and loss of consortium claims could proceed to trial, the record is not sufficient to allow a jury to consider a punitive damages award in this case. A punitive damages claim in a medical negligence case is governed by statute.[70] Under the statute, the trier-of-fact must evaluate the underlying facts and determine whether the conduct was egregious enough to suggest malicious intent or willful and wanton misconduct.[71] Such claims only can reach a trier-of-fact if a reasonable inference exists to warrant an award.[72] Punitive damages are reserved for "I don't care attitude[s]," "conscious indifference," or wanton or willful "disregard for the rights of others."[73] There can be no malicious intent where "unforeseen damage or injury results from intended medication, manipulation, surgery, treatment or the intended omission thereof, administered or omitted without actual malice or if the intended treatment is applied or omitted by mistake to or for the wrong patient or wrong organ."[74]

As previously noted, there is a factual dispute as to why Dr. Park did not notify Mrs. Moulder of the nodules in January 2018 and order the three-month follow-up

---

[69] 18 *Del. C*. § 6855.
[70] *Id.*
[71] *Id.*
[72] *Vick v. Khan, et al.,* 2019 WL 2177114, at *8 (Del. Super. May 17, 2019). "[A] failure to show that a doctor acted with deliberate indifference to the patient's health precludes jury consideration of punitive damages.").
[73] *Armstrong v. A.I. DuPont Hosp. for Children,* 60 A.3d 414, 418 (Del. Super. 2012).
[74] 18 *Del. C*. § 6855.

scan recommended by the radiologist. But neither side's view of the factual record would permit a jury to award punitive damages. Dr. Park argues that, in deciding how to proceed with treatment in Mrs. Moulder's case, Dr. Park had to contend with Mrs. Moulder's significant mental health issues, her ongoing pain as a result of her floor of mouth disease, the size of the nodule, its location, and the fact that it could not be biopsied or tested. With these concerns in mind, Dr. Park contends she exercised her clinical judgment and recommended a six-month follow-up scan, as opposed to a three-month scan.[75] If the jury accepted Dr. Park's testimony, it could not find she exhibited an "I don't care attitude" or "conscious indifference" to Mrs. Moulder's health. Even Mr. Moulder's expert testified that he did not believe Dr. Park acted with an intentional misconduct to cause harm.[76]

Conversely, Mr. Moulder contends Dr. Park failed to timely review or appropriately respond to the January 2018 CT scan. Even if the jury accepted that view of the record, the alleged negligence is not indicative of conscious indifference or willful or wanton misconduct. At most, that record would amount to the omission of treatment without actual malice, which would not support a punitive damages award. Accordingly, summary judgment is appropriate as to Count III.

---

[75] Def.'s Mot. Ex. 5, at 32:3-12, 34:3-11, 38:18-39:16, 41:11-42:1.
[76] *Id.* Ex. 4, at 89:6-9.

## CONCLUSION

For the reasons set forth above, the Court grants Dr. Park's motion for summary judgment as to all Mr. Moulder's claims. **IT IS SO ORDERED**.